A05A1570. DANFORTH v. BULMAN.
(623 SE2d 732)

PHIPPS, Judge.

Sarah Danforth sued Elizabeth Bulman and her son Aaron Bulman for injuries she sustained in a May 12, 2003 collision between her car and a car driven by Aaron Bulman. She asserted claims against Elizabeth Bulman under the family purpose and negligent entrustment doctrines. Elizabeth Bulman filed a motion for summary judgment, and the trial court granted her motion. Danforth appeals the grant of summary judgment on both claims. We affirm in part and reverse in part.

We review the trial court's grant of summary judgment under a de novo standard.[1] Summary judgment is appropriate only when all the facts and reasonable inferences from those facts, viewed in the light most favorable to the non-moving party, show that there is no triable issue as to each essential element of the case.[2]

1. Danforth claims that the trial court erred by granting summary judgment on her claim against Elizabeth Bulman under the family purpose doctrine. The trial court granted Elizabeth Bulman's motion for summary judgment on this claim because it concluded that she "did not retain the right to exercise authority and control over her adult son's use of the vehicle to the extent it could be concluded he was her agent."

The family purpose doctrine often has been stated as follows: "In Georgia, when an automobile is maintained by the owner for the use and convenience of his family, such owner is liable for the negligence of a member of the family having authority to drive the car while it is being used for a family purpose."[3] For the family purpose doctrine to apply, four factors must be present: "(1) the owner of the vehicle must have given permission to a family member to drive the vehicle; (2) the vehicle's owner must have relinquished control of the vehicle to the family member; (3) the family member must be in the vehicle; and (4) the vehicle must be engaged in a family purpose."[4]

Where the four factors are present, the doctrine "render[s] the defendant vicariously liable if [she] had the right to exercise such authority and control that it may be concluded that an agency relationship existed between [her] and the family member with respect to the use of the vehicle."[5] Thus, authority and control are the principal factors in determining whether liability accrues under the family purpose doctrine.[6]

The evidence relevant to this claim includes the fact that in June 2002, Elizabeth Bulman purchased a 1999 Ford Taurus for Aaron with proceeds from his father's life insurance policy. Aaron was 18 years old at the time. She bought the car for him to drive to and from work and school and so that she would not have to drive him around. At the time of the collision, the car was registered in Elizabeth Bulman's name and titled in her name in the State of Georgia records. Elizabeth Bulman testified that she signed the title to Aaron in April

---

[1] *Gaither v. Sanders*, 259 Ga. App. 810 (578 SE2d 512) (2003).

[2] *Clifton v. Zemurray*, 223 Ga. App. 756, 758 (478 SE2d 897) (1996).

[3] *Phillips v. Dixon*, 236 Ga. 271, 272 (223 SE2d 678) (1976) (citations omitted).

[4] *Quan v. Johnson*, 190 Ga. App. 510 (379 SE2d 426) (1989) (citation omitted).

[5] *Murch v. Brown*, 166 Ga. App. 538, 539 (304 SE2d 750) (1983); see also *Bailey v. Butler*, 199 Ga. App. 753 (406 SE2d 97) (1991).

[6] *Murch*, supra.

or May 2003, but Aaron had no recollection of it. Elizabeth Bulman does not have possession of any documents that would show that she transferred title to Aaron. Aaron and his mother both testified that at some point she prepared a handwritten bill of sale and that Aaron gave her $1 for the car, but neither of them had the original or a copy of the writing. Insurance on the car was initially in Elizabeth Bulman's name, on the same policy as her two other cars. In April 2003, the insurance was transferred to Aaron's name and Elizabeth Bulman continued to pay for it. According to Elizabeth Bulman, Aaron was supposed to repay her for the premiums and he did give her some money toward repayment. Aaron testified that he was supposed to make the payments after the initial premium was paid by his mother, but that he never made any payments because the car was totaled before the next premium became due.

At the time of the collision, Aaron was 19 years old and lived with his mother and his younger brother. His mother supported him by providing him with food and a place to live. Aaron was responsible for paying for gas and oil for his car, but nothing more. Elizabeth Bulman testified that she gave Aaron gas money on occasion, but Aaron denied it. Aaron did not need to ask permission to use the car. Elizabeth Bulman testified that she had used the car on a few occasions, but Aaron did not think his mother had ever used the car. Aaron testified that he had the only keys to the car, but his mother said that a spare set was kept in the house. When the collision occurred, at 11:30 p.m., Aaron was on his way to a friend's house.

Elizabeth Bulman tried to subject Aaron to certain rules while he lived in her house: no drinking alcohol or using drugs in her house, no drinking and driving and no parties in her house. Aaron testified that he was subject to these and other "basic parent rules to a teenager" while he was living in her house. According to Aaron, his mother would have restricted his use of the car if she had known that he was drinking alcohol or using drugs prior to the collision. Elizabeth Bulman first testified that she would not have let Aaron drink and then drive and later that she could not have physically stopped Aaron from driving even if she knew he had been drinking because he was stronger than her and known to get violent when drinking. When Aaron was 16, he was restricted from driving after his father caught him drinking and driving and again when his parents found a pipe he had used to smoke marijuana. He said that he was not allowed to drive much that year, but that he was not deprived of the use of a car after that year.

Elizabeth and Aaron Bulman testified that, after the collision, they went separately (with different people) to the salvage yard to get the check for the totaled car. Elizabeth Bulman claimed that she gave the title to the salvage yard to obtain the money; Aaron claimed that

he went with a friend and picked up a check. It is unclear to whom the check was made payable, but they both agree that the money from the salvage yard went to Aaron.

We first consider the four-factor test. Viewed in the light most favorable to Danforth, the evidence showed that Elizabeth Bulman was the owner of the Taurus and that she provided it to Aaron for his pleasure, comfort and convenience, without any expectation of reimbursement.[7] Aaron was in the Taurus at the time of the collision. The fact that he was on his way to a friend's house at the time does not preclude application of the family purpose doctrine.[8] Nor does the fact that Aaron was an adult at the time of the collision render the doctrine inapplicable.[9] We conclude that there was sufficient evidence of each of the four factors.

We now consider whether there was sufficient evidence of Elizabeth Bulman's right to exercise authority and control. The right to exercise authority and control over the use of a vehicle is sufficient; it is not necessary that the owner actually exert such control.[10] The right and authority to control do not have to be proved directly as long as there is sufficient evidence from which a jury could reasonably infer that the owner had such a right.[11]

Viewing the facts and all reasonable inferences from those facts in favor of Danforth, we conclude that the evidence is in conflict regarding Elizabeth Bulman's right to exercise authority and control over the Taurus.[12] Although not dispositive, there is evidence of

---

[7] See *Tolbert v. Murrell*, 253 Ga. 566, 568 (2) (322 SE2d 487) (1984) (owner under family purpose doctrine is someone who owns vehicle, controls its use, has some property interest in it or supplies it); OCGA § 40-3-24 (c) (a certificate of title is prima facie evidence of the facts appearing on it); *Watson v. Brown*, 126 Ga. App. 69, 70 (189 SE2d 903) (1972); see also *Finnocchio v. Lunsford*, 129 Ga. App. 694, 695 (2) (201 SE2d 1) (1973); *Kirkland v. Crawford*, 136 Ga. App. 388, 389-390 (221 SE2d 482) (1975) (wife who executed sales documents because her unemployed husband needed a car and could not obtain the necessary credit was a "provider" under the family purpose doctrine; although husband made down payment and all monthly payments, he could not have obtained car without her credit and willingness to consummate purchase).

[8] See *Ferguson v. Gurley*, 218 Ga. 276, 279-280 (2) (127 SE2d 462) (1962) (family purpose doctrine may impose liability on owner who supplied vehicle even if it is being used at time of injury by a family member exclusively for his own individual use or pleasure); *Marques v. Ross*, 105 Ga. App. 133 (123 SE2d 412) (1961) (fact that son may be on personal errand does not necessarily remove case from family purpose doctrine).

[9] *Hubert v. Harpe*, 181 Ga. 168, 172 (182 SE 167) (1935) (adult child of owner may be a "family member" within the meaning of the family purpose doctrine if child lives in parent's household and uses the car for purpose for which it was provided by parent); *Simmons v. Hill*, 242 Ga. App. 22, 24 (528 SE2d 557) (2000) (child's age is not determinative).

[10] *Gaither*, supra, 259 Ga. App. 810.

[11] *Clifton*, supra, 223 Ga. App. at 758.

[12] See *Young v. Wooldridge*, 187 Ga. App. 661, 663 (1) (371 SE2d 100) (1988) (where evidence in conflict as to father's right to exercise authority and control over use of car, summary judgment was not appropriate).

ownership in Elizabeth Bulman. Aaron's deposition testimony provides evidence that, while living at his mother's house, he was in some respects under her general supervision and was expected to follow her rules.[13] Aaron also testified that his mother would have restricted his use of the Taurus if she had known he was drinking or using drugs prior to the collision.[14] We conclude that the evidence creates an inference that Elizabeth Bulman had the right to exercise authority and control over Aaron's use of the Taurus.[15]

To support the grant of summary judgment on this claim, Bulman relies heavily on *Bailey v. Butler*[16] and *Walston v. White*.[17] We find those cases distinguishable. In both cases, the drivers were financially responsible for the cars they were driving and there was no evidence from which to infer that the parent had the right to exercise any authority or control over the cars. Here, there is evidence from which a jury could conclude that Aaron's use of the Taurus fell under the family purpose doctrine, and the trial court erred in granting summary judgment to Bulman on this claim.[18]

2. Danforth claims that the trial court erred by granting summary judgment on her negligent entrustment claim against Elizabeth Bulman. The trial court ruled that the evidence was insufficient to show that Elizabeth Bulman had actual knowledge that Aaron was incompetent to operate a vehicle at the time she entrusted the Taurus to him.

"Under the doctrine of negligent entrustment, a party is liable if he entrusts someone with an instrumentality, with actual knowledge that the person to whom he has entrusted the instrumentality is incompetent by reason of his age or inexperience, or his physical or mental condition, or his known habit of recklessness."[19] To avoid summary judgment, a plaintiff who asserts a known habit of recklessness as the basis for liability must show that the owner had actual

---

[13] See *Wood v. Jones*, 175 Ga. App. 534, 537 (4) (334 SE2d 9) (1985) (evidence of ownership in the father coupled with fact that son was living at home and subject to parents' general supervision was sufficient to authorize finding that father had right to exercise authority and control over car); *Murch*, supra, 166 Ga. App. at 540 (evidence that daughter lived at home and subject to parents' general supervision created inference that father had right to exercise authority and control over use of car and conclusory statements of father and child to the contrary did not eliminate that inference).

[14] See *Clifton*, supra, 223 Ga. App. at 758 (inference that stepfather had requisite control over son's use of truck supported by evidence that stepfather could have prohibited son from driving truck if he believed he was an unsafe driver).

[15] See *Murch*, supra.

[16] Supra, 199 Ga. App. 753.

[17] 213 Ga. App. 441, 443 (444 SE2d 855) (1994).

[18] See *Clifton*, supra, 223 Ga. App. at 758-759.

[19] *Gunn v. Booker*, 259 Ga. 343, 347 (3) (381 SE2d 286) (1989) (citations and footnote omitted).

knowledge of the driver's pattern of reckless driving or facts from which such knowledge could reasonably be inferred.[20]

The facts relevant to this claim include Aaron's three prior arrests for underage drinking, one in early 2001 and two in 2002. Aaron was sentenced to probation and required to pay fines after the first two offenses and was required to attend Alcoholics Anonymous (AA) meetings once a week after the third offense. Aaron was arrested twice for simple battery, once in 2002 and the other in early 2003. One battery occurred at a concert where he had been drinking and the other occurred at home when Aaron said "I had been drinking, and I stumbled in, kind of fell into my mom," who called the police. Aaron was charged with public drunkenness in 2002. Aaron testified that his mother knew about all of these offenses and about the requirement that he attend AA meetings.

When Aaron was 16, he was restricted from driving when his father caught him driving after he had been drinking and again when his parents found a pipe he had used to smoke marijuana. Aaron testified that his mother was aware of the drinking and driving incident.

At 16, Aaron was also ticketed for passing on a double line. His mother was aware of this ticket. Prior to the May 2003 collision, he had also been cited for not wearing a seat belt (three times) and driving without proof of insurance.

In 2001, Aaron rear-ended a car while driving his mother's truck. He also hit a curb while driving her truck, resulting in $800 damage. In 2002, he totaled his truck when he hit something in the road and lost control. Aaron testified that his mother knew about the prior collisions. He said that he had not been drinking or using drugs prior to those collisions. Police officers investigated two of the collisions, but did not investigate his collision with the curb.

Aaron admitted in his deposition that he had used cocaine the afternoon before the collision with Danforth's car. Although he claimed that he had not used alcohol that day, Aaron pled guilty to driving under the influence of alcohol in connection with the collision.

Elizabeth Bulman testified that she knew about Aaron's prior collisions and about two arrests for underage drinking, but did not recall him undergoing any alcohol or drug counseling. She knew that Aaron drank and knew that he drank in excess, but she did not allow him to drink in the house. She testified that she never found any illegal drugs in the house, but did find alcohol and poured it out.

---

[20] See *Saunders v. Vikers*, 116 Ga. App. 733, 736 (7) (158 SE2d 324) (1967).

Danforth claims that there is at least a question of fact whether Elizabeth Bulman negligently entrusted the Taurus to Aaron knowing that he was incompetent to drive. Danforth argues that because of Aaron's known history of drinking excessively, Elizabeth Bulman also knew he was likely to drive while intoxicated. Danforth also argues that Aaron's three prior collisions, of which his mother was aware, evidenced habitual recklessness.

We have held the evidence insufficient to survive summary judgment on a negligent entrustment claim when an employer knew the driver had driven a company vehicle home after drinking at office socials,[21] when an employer knew the driver drank on the company premises and left beer cans in the company vehicle[22] and when the car owner knew the driver had a drinking problem.[23] It is undisputed that Elizabeth Bulman knew that Aaron drank alcohol, sometimes excessively. There is also evidence that she knew he had been caught by his father after drinking and driving. There is no evidence, however, that she had actual knowledge that he drove while *impaired* by alcohol or drugs.[24]

There is evidence that Elizabeth Bulman had actual knowledge of Aaron's three collisions and his ticket for passing in an illegal zone, which all occurred within an approximately three-year period. But two of Aaron's collisions were relatively minor and he was not cited for any traffic violations as a result of any of the collisions. The only traffic violation of which Elizabeth Bulman was aware occurred when Aaron was 16. We conclude that these facts are not sufficient to establish Aaron's incompetence.[25] The trial court properly granted summary judgment to Bulman on the negligent entrustment claim.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Mikell, J., concur.*

---

[21] *Dester v. Dester*, 240 Ga. App. 711, 714-715 (6) (523 SE2d 635) (1999), overruled in part, *TGM Ashley Lakes v. Jennings*, 264 Ga. App. 456 (590 SE2d 807) (2003).

[22] *Carolina Cable Contractors v. Hattaway*, 226 Ga. App. 413, 416 (487 SE2d 53) (1997) (physical precedent).

[23] *Clarke v. Cox*, 197 Ga. App. 83 (1) (397 SE2d 598) (1990); see also *Greene v. Jenkins*, 224 Ga. App. 640, 641 (1) (481 SE2d 617) (1997) (when car owner gave keys to driver, she knew he had been drinking but lacked actual knowledge that he was incompetent to drive because intoxicated or exhausted); cf. *Thompson v. Bolton Chevrolet Co.*, 125 Ga. App. 369, 370 (187 SE2d 574) (1972).

[24] See *Dester*, supra (owner saw driver consume a few beers before driving, but had never seen him impaired or intoxicated); *Greene*, supra.

[25] Cf. *Smith v. Tommy Roberts Trucking Co.*, 209 Ga. App. 826, 829 (435 SE2d 54) (1993) (evidence showed that employer had actual knowledge of two traffic violations by driver after he commenced his employment and court concluded that it was for jury to decide whether these facts showed driver's incompetence).

538

*Brack & Westee, Philip L. Westee,* for appellant.
*Bridges, Ormand & Faenza, Alvin L. Bridges, Jr., Manko & Lerow, J. Stephen Manko, Drew, Eckl & Farnham, George R. Moody,* for appellee.