**THIRD DIVISION
ANDREWS, P. J.,
DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 21, 2014**

# In the Court of Appeals of Georgia

A13A2447. MCMANUS et al. v. TAYLOR.

A13A2499. JACKSON v. TAYLOR et al.

A14A0097. TAYLOR v. MCMANUS et al.

A14A0098. TAYLOR v. JACKSON.

McMillian, Judge.

These four related appeals arise out of a motor vehicle accident that occurred in Burke County, Georgia on March 17, 2012. In Case No. A13A2447, Krystal McManus, individually and as representative of the estate of Dustin Tyler Durham, and Jessie Clyde Durham, individually, (collectively "McManus") appeal the trial court's grant of summary judgment to defendant Eddie Taylor. In Case No. A13A2499, David Allen Jackson, Jr. ("Jackson") likewise appeals the trial court's grant of summary judgment to Eddie Taylor. In addition, defendant Freddie Taylor

cross-appeals the trial court's denial of his motion for summary judgment in both the McManus and Jackson cases (Case Nos. A14A0097 and A14A0098, respectively). Although these cases were not formally consolidated at the trial level, they involve the same questions of fact and law, and each motion for summary judgment was ruled on in a single order. Therefore, we will address them together on appeal.

We review the denial or grant of summary judgment de novo to determine whether there exists a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. *Johnson v. Bartley*, 321 Ga. App. 59, 59-60 (741 SE2d 275) (2013). So viewed, the evidence shows that in the early morning hours of March 17, 2012, Robert William Taylor ("Billy") drove a 2001 Pontiac Firebird ("Firebird") to the home of Krystal McManus. Shortly after arriving there, Billy, McManus's son Dustin Tyler Durham, Michael Collins, and Jackson decided to go for a ride in the Firebird. There is evidence that Collins was in the front passenger seat, Jackson was in the backseat behind Collins, and Durham was seated behind Billy, who was driving. Not long after driving away from the McManus residence, Billy lost control of the vehicle and crashed into a tree. As a result of the crash, Durham died of blunt impact head trauma, and Jackson was paralyzed from the waist down. Billy was eventually

2

charged with vehicular homicide, driving under the influence, reckless driving, and driving with a suspended license.

On March 30, 2012, Appellant Jessie Clyde Durham filed suit against Billy Taylor. His complaint was later amended several times to add Krystal McManus as a plaintiff and to add Taylor Brothers Auto Sales, Incorporated ("Taylor Brothers"), Freddie Taylor, Eddie Taylor, Taylor Auto Shop, Inc., and Taylor Bros X-Press, Inc. as additional defendants.[1] Appellant Jackson filed suit one month later against Billy Taylor, Taylor Brothers, Freddie Taylor, and Eddie Taylor.

Billy is the 24-year-old son of Freddie Taylor and nephew of Eddie Taylor. Eddie Taylor is the CEO of Taylor Brothers, a local company that sells used cars in Burke County. Freddie Taylor is the company's CFO. For several years prior to the accident, Taylor Brothers had authorized Billy to purchase cars at various auctions using its dealer's license. Once he purchased a vehicle, he gave Taylor Brothers the right of first refusal to purchase it for resale. If Taylor Brothers chose not to purchase

---

[1] Taylor Auto Shop, Inc. and Taylor Bros X-Press, Inc. are additional corporate entities run in various capacities by Eddie and/or Freddie Taylor. Neither is a party to this appeal.

a vehicle from Billy,[2] he would resell it at another auction for profit. Billy had purchased the Firebird involved in the accident at an auction in the name of Taylor Brothers six months earlier. Freddie Taylor decided that he wanted to personally keep the vehicle as a collector's car, which he stored under cover in a barn on his personal property, although the car remained titled in the name of Taylor Brothers. Eddie Taylor was not aware that his brother had kept the car until he was told sometime later. He saw the car only once, at his brother's house, before the accident.

On March 15, 16, and 17, 2012, Freddie and Eddie Taylor were in Tybee Island, Georgia, where they have a vacation home. On March 15, Trey Taylor, the nephew of both Freddie and Eddie Taylor, called Freddie and asked if he could borrow the Firebird to drive to Jackson, South Carolina to watch the drag races that night. Freddie gave Trey permission to use the vehicle for the limited purpose of going to the Jackson races only, with explicit instructions to return the car to his house immediately upon returning from South Carolina that Thursday night. There is no evidence that Eddie Taylor was aware of this conversation or knew that Trey was borrowing the vehicle at all, and he did not learn of the vehicle's use until after

---

[2] If Taylor Brothers purchased a vehicle from Billy for resale, Billy was paid a small profit per vehicle.

the accident. Upon reaching his uncle's house where the Firebird was located, Trey had to call him back in order to find the vehicle's keys, which were hidden in a separate location.

That evening, Trey drove himself and Billy to the races and then returned to Burke County. However, instead of returning the Firebird to Freddie Taylor's house as requested, he left the car at Billy's apartment and put the keys under the seat. There is evidence that the next day, March 16, Trey and Billy drove the Firebird to Augusta and to various local places in Burke County. That evening, Trey again left the car at Billy's apartment before returning to his own home. Billy eventually drove the Firebird to the McManus's home, and the accident occurred nearby around 1:00 a.m. on March 17.

Billy, who was 22 years old at the time of the accident, had a total of 11 driving violations between 2007 and 2011, including five for speeding and two DUIs. There is evidence that both Freddie and Eddie Taylor knew at least some details of Billy's driving record and were aware that his driver's license had been suspended. Although both deposed that Billy had not driven any Taylor Brothers' vehicles while his license was suspended, various witnesses averred that they saw Billy driving a rollback (used to tow vehicles) with Taylor Brothers signs on it several times in the year before the

5

accident, as well as driving various vehicles back and forth from Taylor Brothers to another auto shop to be repaired.

Following discovery, Eddie Taylor filed a motion for summary judgment in both the McManus and Jackson matters. Shortly thereafter, Freddie Taylor and Taylor Brothers also filed their summary judgment motions in each case. After a hearing, the trial court granted Eddie Taylor's motions for summary judgment but denied those filed by Freddie Taylor and Taylor Brothers. These appeals and cross-appeals followed.

*Case Nos. A14A0097 and A14A0098*

1. In his cross-appeals, Freddie Taylor argues that the trial court erred in denying his motions for summary judgment because there is no genuine issue of material fact as to (1) whether he negligently entrusted the vehicle to Billy; (2) whether he entered into a joint venture with the other defendants; or (3) whether he entered into a civil conspiracy with the other defendants.[3] Because we find the trial court erred in denying summary judgment to Freddie Taylor, we reverse.

---

[3] Because neither a joint venture nor civil conspiracy claim were alleged by Jackson below, only the first enumeration of error is at issue in Freddie Taylor's appeal of the Jackson matter in Case No. A14A0098.

6

"In a negligent entrustment claim, liability arises from the negligent act of the owner in lending his automobile to another to drive, with actual knowledge that the driver is incompetent or habitually reckless. To recover under this theory of negligence, therefore, a plaintiff must prove that the vehicle owner gave the allegedly incompetent driver permission to drive the vehicle." (Citations and punctuation omitted.) *Bashlor v. Walker*, 303 Ga. App. 478, 480 (1) (a) (693 SE2d 858) (2010); see also (Citations and punctuation omitted.) *Jones v. Cloud,* 119 Ga. App. 697, 699 (168 SE2d 598) (1969) ("Knowledge of the driver's incompetency is an essential element of the rule which holds an owner liable for furnishing his automobile to an incompetent driver and such knowledge must be actual rather than constructive") (citations and punctuation omitted).

Although McManus and Jackson are able to establish that Freddie Taylor did give express permission to Trey to drive the Firebird to Jackson, South Carolina on Thursday, March 15, 2012, that permission was clearly and undisputedly limited. See *Willis v. Allen*, 188 Ga. App. 390, 390 (373 SE2d 79) (1988) (affirming grant of summary judgment to defendants on negligent entrustment claim where, although defendants had allowed their brother to use their car while he was living with them, there was no evidence that they had done so since he moved out). Both Billy and

7

Freddie Taylor averred that Billy did not have permission to drive the Firebird. Their testimony is supported by the fact that neither Billy nor Trey knew where the keys to the Firebird were kept, and Trey was forced to call his uncle a second time in order to gain access to those keys. McManus and Jackson have pointed to no direct evidence otherwise. Where the uncontroverted evidence shows that Billy took the Firebird without Freddie Taylor's permission and knowledge, it cannot be said that Freddie Taylor lent Billy the car or otherwise entrusted him with it. See *Williams v. Britton*, 226 Ga. App. 263, 264 (485 SE2d 835) (1997) (affirming grant of summary judgment to vehicle owner where the vehicle was driven without his permission and knowledge).[4]

McManus and Jackson, however, argue that Billy was employed by Taylor Brothers, such that there is an inference that permission was given to use the vehicle, and that this inference is sufficient to withstand summary judgment. We disagree. Even assuming that Billy was employed by Taylor Brothers, for purposes of

---

[4] In *Williams*, the vehicle owner parked his car in front of his family's home, left the keys in the car and went inside to sleep. His brother took the car while he was sleeping and caused an accident while intoxicated. This Court rejected appellants' argument that the brother had the vehicle owner's implied consent to drive the car where the brother testified that he had never been allowed to drive the car without permission. Id.

considering these summary judgment motions, we find no genuine issue of material fact as to whether Freddie Taylor permitted Billy to drive the Firebird on the night of the accident. It is undisputed that Freddie Taylor retained the Firebird for his personal use and enjoyment and that it was not used in furtherance of any business of Taylor Brothers even though the title remained with the company. And Billy drove the Firebird for wholly personal purposes, i.e., to attend a party. The evidence also shows that no one, not even Freddie Taylor himself, had driven the Firebird for months leading up to the accident. Moreover, Billy testified that he did not have permission to drive the Firebird.[5] His cousin, Trey, also testified that he knew not to let Billy drive, even if that instruction was not explicitly repeated. There can be no entrustment

---

[5] McManus and Jackson argue that Billy's testimony regarding permission to drive the Firebird is equivocal and therefore should be construed against him, citing *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (343 SE2d 680) (1986). However, even if we agreed with their characterization of Billy's testimony, "*Prophecy Corp.* stands for the position that self-contradictory testimony is construed against the *equivocator*, absent a reasonable explanation for the contradiction." (Emphasis supplied.) *Korey v. BellSouth Telecommunications, Inc.*, 269 Ga. 108, 108-109 (498 SE2d 519) (1998). Thus, Billy's testimony could only be construed against Billy, not Freddie Taylor. Moreover, that holding is based on "summary judgment cases which clearly state that the opposing party is entitled to judgment only where the favorable portion of the party's self-contradictory testimony is the *only* evidence of his right to recover or of his defense." (Citation and punctuation omitted; emphasis in original.) Id. at 109. Here, Billy's testimony is not the only evidence that Freddie Taylor did not negligently entrust Billy with the Firebird.

9

of a vehicle when it is taken without permission and operated without the owner-entrustor's knowledge and consent. See, e.g., *Pague v. Pendley*, 177 Ga. App. 573 (340 SE2d 190) (1986) (affirming grant of summary judgment to vehicle owner under theories of agency, negligent entrustment, and family purpose doctrine where owner's ex-husband had been given permission to stay the night at her residence and then, unbeknownst to her, took her vehicle and caused an accident the following morning); see also *Grant v. Jones*, 168 Ga. App. 690, 693 (310 SE2d 272) (1983) (physical precedent only) (affirming grant of summary judgment to vehicle owner where employee took the vehicle on a personal mission after work hours without permission or owner's knowledge because there was no entrustment of the vehicle at the time of the accident).

McManus and Jackson also attempt to bolster their allegation of implied permission by showing that Billy had been seen driving other vehicles owned by Taylor Brothers around town before the accident. However, whether such circumstantial evidence is sufficient to prove that Billy had permission to drive other vehicles at other times is not sufficient evidence to create a genuine issue of material fact as to Freddie Taylor's entrustment of the Firebird on the night of the accident. See *Butler v. Warren*, 261 Ga. App. 375 (582 SE2d 530) (2003) (affirming grant of

summary judgment where there was no evidence that defendants entrusted the vehicle to their employee for that particular use); see also *Watkins v. Jackson*, 215 Ga. App. 380, 380 (451 SE2d 111) (1994) (evidence of prior vehicle use not sufficient to withstand summary judgment on a negligent entrustment claim). We also point out that, despite several witnesses' testimony that they had seen Billy drive the Firebird in the days prior to the accident, the record does not reflect that these incidents took place either (1) with Freddie Taylor's permission or (2) prior to Thursday, March 15, when Trey obtained permission to drive the vehicle while Freddie Taylor was out of town. See id.

McManus and Jackson's contention that Freddie must have foreseen that Billy would recklessly drive the vehicle on Friday night/Saturday morning – even though he only gave permission to Trey to drive the vehicle, and even then only on Thursday night – "amounts only to conjecture and does not establish a genuine issue of material fact precluding summary judgment." *Bashlor*, 303 Ga. App. at 482. Similarly, their argument that the "nature of the witnesses' testimony and their relationship to each other in this case *itself* creates an issue of fact as to its credibility is not legally sound. An issue of credibility is not raised where there is no conflicting or contradictory

11

evidence on a material matter or impeachment, or inherent discredit." (Emphasis in original.) *Willis*, 188 Ga. App. at 392.

Because McManus and Jackson are unable to establish that Freddie Taylor had given Billy permission to drive the Firebird, either expressly or impliedly, we need not consider whether Freddie Taylor had actual knowledge of Billy's alleged incompetence or habitual recklessness. Liability under a theory of negligent entrustment "is premised upon *both* the exercise of the power to entrust an instrumentality *and* actual knowledge of the incompetency of the one to whom the instrumentality is entrusted. Mere exercise of the power to entrust an instrumentality without the actual knowledge of incompetency or mere possession of the requisite actual knowledge without the requisite power to entrust will not support a finding of liability under this theory." (Emphasis in original.) *Viau v. Fred Dean, Inc.*, 203 Ga. App. 801, 803 (3) (418 SE2d 604) (1992); see also *Danforth v. Bulman*, 276 Ga. App. 531 (623 SE2d 732) (2005). Accordingly, we find that Freddie Taylor has established there is no genuine issue of material fact as to whether he entrusted the Firebird to his son, and it was therefore error for the trial court to deny his motions for summary judgment.

12

2. McManus' joint venture theory of liability in Case No. A14A0097 likewise fails. "A joint venture arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control . . . so as to render all joint venturers liable for the negligence of the other." (Citation and punctuation omitted.) *Williams v. Chick-Fil-A, Inc.*, 274 Ga. App. 169, 170 (617 SE2d 153) (2005). Even if Billy were involved in a joint venture with Freddie Taylor, the undisputed evidence shows that at the time of the accident, Billy was operating the vehicle on a purely personal mission. See *Williams*, 274 Ga. App. at 172 (finding that under such circumstances, the trial court did not err in concluding as a matter of law that the driver and the corporation were not engaged in a joint venture or other agency relationship with regard to the events that resulted in plaintiff's injuries). We therefore find that the trial court erred in denying summary judgment to Freddie Taylor as to McManus' joint venture claim in Case No. A14A0097.

3. McManus' final enumeration of error in Case No. A14A0097 is also without merit. Georgia law does not recognize an independent tort of "conspiracy." Rather, a conspiracy is a combination between two or more persons to do some act which is a tort or else to do some lawful act by unlawful methods. See *Cook v. Robinson*, 216 Ga. 328, 328 (1) (116 SE2d 742) (1960). Therefore, the gist of the action is not the

conspiracy alleged, but the tort committed against the plaintiff and the resulting damage. Id. Pretermitting whether Billy and Freddie Taylor were engaged in a civil conspiracy to allow Billy (despite his lack of a license) to purchase vehicles on behalf of Taylor Brothers for profit, the real difficulty with the McManus' theory is that there is no evidence that the instant accident was caused by such a business arrangement. Rather, Billy was undisputedly on a purely personal mission at the time of the accident. Moreover, nothing in the record shows that Freddie had any knowledge that Billy was on this personal mission, and therefore they could not have formed the requisite tacit understanding to engage in a civil conspiracy as to the event giving rise to McManus' injuries. See, e.g., *Lewis v. D. Hay Trucking, Inc.*, 701 FSupp.2d 1300, 1310 (N. D. Ga. 2010) (applying Georgia law). We therefore reverse the trial court's denial of summary judgment to Freddie Taylor as to the McManus' claim of civil conspiracy in Case No. A14A0097.

*Case Nos. A13A2447 and A13A2499*

4. In Case Nos. A13A2447 and A13A2499, McManus and Jackson argue that the trial court erred in granting Eddie Taylor's motions for summary judgment because a genuine issue of material fact exists as to (1) whether Eddie Taylor negligently entrusted the vehicle to Billy; (2) whether Eddie Taylor entered into a

14

joint venture with the other defendants for profit with rights of mutual control as to the employment or direction of Billy Taylor; and (3) whether Eddie Taylor entered into a civil conspiracy with the other defendants where it was to the mutual benefit of the defendants to knowingly allow Billy Taylor to operate vehicles on their behalf despite their imputed knowledge of his incompetence or habitual recklessness.[6] In support of their negligent entrustment claim, McManus and Jackson argue that Eddie Taylor had, at a minimum, control over the use of the Firebird, that Billy had Eddie Taylor's implied consent to use the vehicle, and that Eddie Taylor had actual knowledge of Billy's alleged incompetence or habitual recklessness. McManus and Jackson are correct that one need not be the legal owner of a vehicle in order to be liable under the theory of negligent entrustment. See *Jones*, 119 Ga. App. at 701 (1) (b). However, we nonetheless find the evidence insufficient as a matter of law to show that Eddie Taylor negligently entrusted the Firebird to his nephew.

While conceding that Eddie Taylor did not give Billy express permission to drive the Firebird, McManus and Jackson maintain that Billy had his implied permission because Eddie Taylor did not tell Trey that only he was allowed to drive

---

[6] Only the first claim of error is at issue in Jackson's appeal in Case No. A13A2499.

15

the Firebird when he called Freddie Taylor to ask for permission. We find no merit to this argument where there is no evidence that Eddie Taylor was even aware that a conversation between Freddie Taylor and Trey took place regarding his use of the Firebird. In addition, for the reasons stated in Case Nos. A13A2447 and A13A2499, Division 1 above, any inference that Billy had implied permission through his alleged status as an employee of Taylor Brothers is not sufficient to withstand summary judgment in this case where that inference has been rebutted.

McManus and Jackson also attack Eddie Taylor's credibility, in part based on his familial relationship with Billy, in an attempt to defeat summary judgment. However, "[s]ummary judgment cannot be avoided based on speculation or conjecture; once the pleadings are pierced with actual evidence, the plaintiff must point to admissible evidence showing a genuine issue of fact." *Cowart v. Widener*, 287 Ga. 622, 633 (3) (c) (697 SE2d 779) (2010). As our Supreme Court explained, "while the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor, . . . that does not mean that a plaintiff may defeat a defendant's properly supported motion for summary judgment without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could disbelieve the

16

defendant's denial of wrongdoing." (Citation and punctuation omitted.) Id. at 634 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (106 SCt 2505, 91 LE2d 202) (1986)). Therefore, a "nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations or subjective evidence." (Citation and punctuation omitted.) Id. Because McManus and Jackson are unable to establish that Eddie Taylor gave Billy permission to drive the Firebird, either expressly or impliedly, we need not consider whether he had actual knowledge of his nephew's alleged incompetence or habitual recklessness. See *Viau*, 203 Ga. App. at 803 (3).

5. For the reasons stated in Divisions 2 and 3 above, McManus' alternative theories of liability in Case No. A13A2447 likewise fail. Accordingly, we find that the trial court did not err in granting summary judgment to Eddie Taylor.

*Judgments affirmed in Case Nos. A13A2447 and A13A2499. Judgments reversed in Case Nos. A14A0097 and A14A0098. Andrews, P. J., and Dillard, J., concur.*

17