**FIRST DIVISION**
**BARNES, P. J.,**
**WATKINS and LAND, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 14, 2023**

# In the Court of Appeals of Georgia

A23A1134. BASSETT v. WINFIELD FARM, INC. et al.

WATKINS, Judge.

After Jami Nicole Bassett was injured while riding in a Jeep driven by her 14-year-old friend, Addison Morel ("Addison"), Bassett filed a civil action alleging that Addison's mother, Amy Morel ("Morel"), had negligently entrusted Addison with the vehicle. The trial court granted summary judgment against Bassett, and Bassett now appeals. Because the record establishes as a matter of law that Addison did not have Morel's permission to drive the Jeep at the time of the accident, we affirm the trial court's judgment.

We review the trial court's grant of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the nonmovant.[1] So viewed, the record establishes that at the time of the accident, both Addison and Bassett were 14 years old. Morel lived on a 700-acre cattle farm, and Bassett, Addison, and a friend slept at Morel's house on the night before the accident. They woke up around 8:00 a.m., while Morel was still sleeping, and took Morel's Jeep for a drive. The teens drove for about half an hour, traveling on paths and driveways across farms as well as on county roads. As she drove, Addison used her phone to play music. Immediately before the accident, Addison was looking at her phone to change the song. She lost control of the vehicle, and it flipped into a ditch. All three teens were thrown from the Jeep, and Bassett sustained serious injuries. Addison received five citations, for distracted driving, driving without a license, and three seat belt violations.

Bassett[2] filed suit against Amy Morel and the company she owned, Winfield Farm, Inc.,[3] raising claims of negligent entrustment and seeking to recover for

---

[1] See *Henry v. Griffin Chrysler Dodge Jeep Ram*, 362 Ga. App. 459, 460 (868 SE2d 827) (2022).

[2] The action was filed by Bassett's parents, and she was substituted as the named plaintiff after she reached the age of majority.

[3] The Jeep was insured through Winfield Farm.

Bassett's medical expenses and pain and suffering, plus punitive damages and attorney fees.

During discovery, Addison deposed that she had been driving four-wheelers for years and that she began learning to drive licensed vehicles more than a year before the accident. As she got better at driving, her mother allowed her to progress from driving vehicles on the family's property to driving across the street. Addison typically drove the Jeep, which was a stick shift, and before the accident she drove a few times a week.

Morel deposed that she, not Winfield Farm, owned the Jeep. She kept the keys to each of the family's vehicles in that vehicle. However, both Addison and Morel testified that Addison was required to ask Morel for permission before driving the Jeep. Morel testified that she would not allow Addison to drive in the mornings because log trucks traveled on the road near their house at that time. Morel was not aware of Addison ever taking a vehicle without first asking permission. Addison acknowledged that she did not ask her mother for permission to drive the Jeep on the morning of the accident, in part because Addison was not certain her mother would agree.

As another rule for Addison's driving, Morel identified "turnaround spot[s]" which Addison was not permitted to travel beyond. Addison sometimes drove farther than Morel permitted and when she confessed to doing so, Morel restricted her from driving for a period of time. Eventually, although Addison did not stop driving farther than allowed, she stopped answering truthfully when Morel asked if she had been driving farther. Morel could not recall the location of Addison's "turnaround spot" at the time of the accident, so she did not know whether the accident occurred past the point Morel had set at that time.

The trial court granted Morel and Winfield Farm summary judgment on all of Bassett's claims. As to Morel, the trial court found that there was no negligent entrustment because Addison took the Jeep that day without Morel's permission, the accident occurred in a location where Addison was not permitted to drive, and Morel had no knowledge that Addison was an incompetent driver. As to Winfield Farm, the trial court found that the company was entitled to summary judgment because it did not own the Jeep and there was no connection between the teens' "joyride" and the business. The trial court further found that Bassett was barred from recovering based on principles of comparative negligence, the avoidance doctrine, and assumption of the risk.

1. On appeal, Bassett argues that the trial court erred in ruling as a matter of law that Morel cannot be held liable for negligent entrustment.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."[4]

> In a motion for summary judgment, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party meets this burden, the nonmoving party cannot rest on [her] pleadings, but rather must point to specific evidence giving rise to a triable issue.[5]

> In a negligent entrustment claim, liability arises from the negligent act of the owner in lending his automobile to another to drive, with actual knowledge that the driver is incompetent or habitually reckless. To recover under this theory of negligence, therefore, a plaintiff must prove that the vehicle owner gave the allegedly incompetent driver permission to drive the vehicle.[6]

---

[4] (Citation and punctuation omitted.) *Ellison v. Burger King Corp.*, 294 Ga. App. 814, 815 (670 SE2d 469) (2008); see OCGA § 9-11-56 (c).

[5] (Citation and punctuation omitted.) *Ellison*, 294 Ga. App. at 819 (3) (a); see OCGA § 9-11-56 (e).

[6] (Citations and punctuation omitted.) *McManus v. Taylor*, 326 Ga. App. 477, 480 (1) (756 SE2d 709) (2014).

Here, both Addison and Morel testified that Addison was not allowed to drive the Jeep without asking Morel first, and it is undisputed that Addison did not ask Morel for permission on the day of the accident. Bassett characterizes Addison and Morel's testimony regarding this rule as self serving and insists that it should be treated as an issue of credibility for the jury to resolve. But "[a]n issue of credibility is not raised where there is no conflicting or contradictory evidence[,]"[7] and Bassett has not refuted Addison and Morel's affidavit and deposition testimony regarding the existence of this rule.

As our Supreme Court has stated, "[w]here, as here, direct and positive testimony is presented on an issue, the opposing party must show some other fact which contradicts the testimony."[8]

> If this other fact is direct evidence, that is sufficient to allow the case to go to the jury; if the other fact is circumstantial evidence, it must be inconsistent with the defendant's evidence, or if consistent, it must demand a finding of fact on the issue in favor of the plaintiff. In passing upon a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no

---

[7] *Willis v. Allen*, 188 Ga. App. 390, 392 (373 SE2d 79) (1988).

[8] (Citation and punctuation omitted.) *Haley v. Regions Bank*, 277 Ga. 85, 88 (1) (586 SE2d 633) (2003).

probative value against positive and uncontradicted evidence that no such fact exists.[9]

In the face of Addison and Morel's deposition and affidavit testimony that Addison was only allowed to drive the Jeep if she asked Morel first, Bassett contends that the following facts create a genuine dispute as to whether such a rule existed: Morel had allowed Addison to drive the Jeep on previous occasions, including the night before; Morel knew Addison had broken her driving rules before, but still let her drive; and Morel left the keys to the Jeep in the Jeep itself, so the vehicle was readily accessible to Addison. But none of this evidence is inconsistent with a rule that Addison was required to ask Morel before driving the Jeep, and none of it demands a finding that, at the time of the accident, Addison was driving the Jeep with Morel's permission even though she did not ask first.[10] As we have previously recognized, where the record shows that a driver was required to ask the owner for permission before driving the car, the driver's previous use of that car does not

---

[9] (Citation and punctuation omitted.) Id. at 89 (1).

[10] See *Bonner v. Southern Restaurant Group, Inc.*, 271 Ga. App. 497, 500 (610 SE2d 129) (2005) (where the defendant's managers testified that the parking lot lights were working on the night of the incident, the plaintiff's affidavit "generally averring that the lighting was inadequate on some unspecified date" carried "no probative value" and did not create a jury issue).

establish that she had the owner's permission at the particular time in question.[11] This is true even when the owner leaves the keys in the car.[12] And although Addison had broken Morel's driving rules in the past, by driving farther than allowed, there is no indication that she had ever taken the Jeep without asking first. Therefore, Morel's leaving the keys in the Jeep was not evidence that she was waiving the rule that Addison ask her permission before taking the Jeep.

In the absence of evidence that Morel gave Addison permission to drive the Jeep at the time of the accident, Bassett's claim for negligent entrustment fails as a matter of law.[13] The trial court, therefore, correctly granted Morel's motion for summary judgment.

2. Next, Bassett contends the trial court erred in ruling that Winfield Farm was entitled to summary judgment on her negligent entrustment claim. Again, as discussed above,

---

[11] See *McManus*, 326 Ga. App. at 480-482 (1); *Williams v. Britton*, 226 Ga. App. 263, 263-264 (485 SE2d 835) (1997).

[12] See *Willis*, 188 Ga. App. at 391-392 (because the evidence showed that the driver was required to obtain permission before taking the owner's car, evidence that the owner left keys in the car was insufficient to raise an inference of implied consent).

[13] See *McManus*, 326 Ga. App. at 480 (1).

[u]nder the theory of negligent entrustment, liability is predicated not on the doctrine of respondeat superior but on a negligent act of the owner in lending his vehicle to another to drive, with actual knowledge that the driver is incompetent or habitually reckless[.][14]

Here, the record clearly reveals that the Jeep was owned by Morel rather than by the business. Additionally, as the trial court found, there is no evidence suggesting that the teens were acting on behalf of Winfield Farm when they went for a ride that morning. Consequently, we affirm the trial court's grant of summary judgment to Winfield Farm.

3. We decline to address the remaining arguments in Bassett's appeal. Her challenges to the trial court's rulings on Addison's incompetence as a driver and Morel's knowledge thereof, Bassett's comparative negligence, Bassett's ability to avoid the consequences of the alleged negligence, and Bassett's assumption of the risk are moot in light of our conclusion that Addison was driving the Jeep without Morel's permission.[15] And because Bassett's negligent entrustment claims are subject

---

[14] (Citation and punctuation omitted.) *Dougherty Equip. Co. v. Roper*, 327 Ga. App. 434, 438 (2) (757 SE2d 885) (2014).

[15] We note that, other than negligent entrustment, Bassett did not present any additional theories of liability before the trial court or on appeal.

to summary judgment, her derivative claims for punitive damages and attorney fees also fail.[16]

*Judgment affirmed. Barnes, P. J., and Land, J., concur.*

---

[16] See *Racette v. Bank of America, N.A.*, 318 Ga. App. 171, 181 (6) (733 SE2d 457) (2012) ("An award of attorney fees, costs, and punitive damages is derivative of a plaintiff's substantive claims.").