**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 30, 2024**

# In the Court of Appeals of Georgia

A24A0750. THE WEST FIRM, P. C. v. CENTRAL UNITED METHODIST CHURCH OF ATLANTA, INC. et al.

MCFADDEN, Presiding Judge.

The West Firm, P. C. ("West") appeals from an order granting summary judgment to Central United Methodist Church of Atlanta, Inc. ("the church") and eight individual defendants on West's claims for breach of contract, tortious interference with contractual relations, and conspiracy to commit such tortious interference. Because West has pointed to evidence showing genuine issues of material fact as to the breach of contract claim, we reverse the grant of summary judgment on that claim. But we affirm the grant of summary judgment on the tortious interference and conspiracy claims because West has not shown triable issues on essential elements of those claims.

1. *Facts and procedural posture*

"On appeal from a grant of summary judgment, we apply a de novo standard of review and view the evidence in the light most favorable to the nonmovant." *Rollins v. Smith*, 353 Ga. App. 209, 211 (1) (836 SE2d 585) (2019) (citation and punctuation omitted).

So viewed, the evidence shows that in February 2021, the church and West entered into a general counsel retainer agreement whereby the church paid an initial $5,000 retainer fee in exchange for West providing general legal counsel. In October 2021, West submitted an invoice to the church for $9,391 in outstanding fees. The church did not pay the invoice, and West inquired about payment on two different occasions in November 2021. On December 14, 2021, having still not received payment, West informed the church that it would pick up a check for $9,391 on December 16th and asked for confirmation that the check would be ready for pick-up on that date. . The church did not respond to the email or otherwise confirm that a check would be available for West to pick up on December 16th.

West sent the church an email terminating the retainer agreement on the night of December 16th and then filed the instant lawsuit on December 17, 2021. The

complaint set forth multiple counts against all the defendants, including claims for breach of contract by the church for failing to pay $9,391 in legal fees, tortious interference with contractual relations by the individual defendants for allegedly interfering with such payment and the general counsel retainer agreement, and conspiracy of the individual defendants to commit the tortious interference. In January 2022, the church sent West an offer to settle the case which included a $9,391 check dated December 16, 2021, and provided that by negotiating the check West would agree to dismiss all its pending claims with prejudice. West did not accept the offer, and the defendants subsequently moved for summary judgment on all counts of the complaint.

The trial court granted the motion as to all claims. With regard to the breach of contract claim, the court found that it was undisputed that the church owed West $9,391. But the court also found, based on a church administrator's affidavit, that on December 16, 2021, the church had prepared a $9,391 check payable to West and made it available for pick-up at the church. Thus, the court concluded, there was no breach of contract for failure to pay because the church had sufficiently tendered payment.

As for the tortious interference claim, the court found, among other things, that the individual defendants had acted only in their capacities as church officers and members of its leadership team, so there was no evidence of the essential element that the defendants were strangers to the contract. And absent the underlying tort of interference with contractual relations, the court ruled that the conspiracy claim also could not stand. This appeal followed.

2. *Breach of contract*

West asserts that the trial court erred in relying on the church administrator's affidavit, while ignoring other material evidence, to find no triable issues as to whether the church actually prepared and sufficiently tendered the $9,391 check on December 16, 2021. We agree.

> Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). Thus, to prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law. A defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the

record an absence of evidence to support such claims. . . . Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

*Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted).

Here, the church supported its motion for summary judgment with the affidavit of defendant Mildred Gunn, a church administrator. In the affidavit, Gunn stated that on December 16, 2021, she prepared a $9,391 check payable to West; that she taped an envelope containing the check to an office window for West to pick up; that West did not pick up the check; that an attached photograph showed the envelope still taped to the window on December 18th; and that in January 2022, the check was sent to West.

In response, West contends that there are questions of fact as to whether the check sent to it in January 2022 as part of the church's settlement offer had actually been prepared on December 16, 2021, or whether it had been back-dated. In support, West points to an exhibit of a ledger printed from the church's electronic accounting system and Gunn's deposition testimony as evidence creating genuine issues of

material fact regarding the check. The ledger, which was printed on January 27, 2022, lists checks issued to West for legal fees from 2018 to 2021, but it does not show any check written on December 16, 2021 or in the amount of $9,391. When asked about the ledger at her deposition, Gunn testified: "It's the column form that was printed from the church's accounting — electronic accounting system. . . . And it is a manner in which the system keeps an automated record *of all the checks that are written*." (Emphasis supplied). Gunn explained that such information about checks written to vendors can be extracted from the electronic accounting system by the church financial secretary, who "is able to go in and extract this kind of information upon request." (Emphasis supplied). As Gunn had previously deposed, the church's "electronic accounting system . . . *accounts for every check that is written in the church*." (Emphasis supplied).

The church claims that the ledger could not reference the $9,391 check because it had not yet been negotiated by West. But the church cites no evidence to support this claim that the ledger shows only negotiated checks. And Gunn's testimony that the electronic accounting system records every check that is written contradicts the

claim that the ledger printed from that system would include only checks that have been negotiated.

The church also argues that Gunn did not expressly depose that the ledger shows all checks written to West. But as noted above, on summary judgment "we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." *Cowart*, supra at 624 (1) (a) (citation and punctuation omitted). So viewed, it is a reasonable inference from Gunn's testimony that the ledger shows all the checks written to West as recorded in the church's electronic accounting system, which accounts for every check written by the church. Because the ledger of checks written to West does not include a $9,391 check written on December 16, 2021, it conflicts with the church's claim that such a check was prepared and made available on that date. If there is other evidence in the record explaining this apparent conflict, the church has failed to point it out. And "[i]t is not the function of this [c]ourt to cull the record on behalf of a party, particularly in a case such as this where the record is voluminous." *Sinyard v. Georgia Power Co.*, 363 Ga. App. 195, 196, n. 2 (871 SE2d 45) (2022) (citation and punctuation omitted).

West also points to evidence that the church's failure to provide the requested confirmation that a $9,391 check would be available on December 16th did not comport with its prior practice of always notifying West whenever a check was ready for pick-up. Attorney Lisa West swore in an affidavit that on all prior occasions when the church had paid for legal services, it would contact West to confirm that the check would be ready for pick-up on a specific date and at a certain time. Lisa West further swore that the church never notified West of any such check after it was purportedly posted on December 16th, "with the exception of the claim suddenly being made in this litigation[.]"

Given the evidence that the church failed to respond to West's express request for confirmation that a check would be available for pick-up, that the lack of such notification was inconsistent with the church's normal practice regarding available checks, and that the ledger does not include the check in question, we find genuine issues of material fact as to whether the $9,391 check was prepared and sufficiently tendered on December 16, 2021. The trial court therefore erred in finding no such triable issues and in granting summary judgment on the breach of contract claim.

3. *Tortious interference with contractual relations*

West argues that the trial court erred in granting summary judgment to the individual defendants on the claim for tortious interference with contractual relations. We disagree.

> Parties to a contract have a property right therein with which a third party cannot interfere without legal justification or privilege, and a party injured by another's wrongful interference may seek compensation in tort. To recover under a theory of tortious interference with contractual relations, a plaintiff must establish: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligation or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff. A plaintiff's failure to establish even one of the elements entitles a defendant to summary adjudication.

*AMAC Two, LLC v. Web, Ltd.*, 370 Ga. App. 119, 127 (2) (894 SE2d 414) (2023) (citations, punctuation, and footnote omitted).

In this case, the trial court found that West could not satisfy the first element of the alleged tort because the individual defendants had acted within their capacities as church officers and leaders in expressing concerns about paying West. Indeed, both this court and the Georgia Supreme Court have explained

> that "without privilege" in the first element means that the defendant is a stranger to the business relationship or contract. One is not a stranger

9

> to the contract just because one is not a party to the contract. A party, under appropriate circumstances, can be a non-signer of a particular contract and yet not be a stranger to the contract itself or to the business relationship giving rise thereto and underpinning it. *For example, where a defendant has a legitimate interest in either the contract or a party to the contract, the defendant is not a stranger to the contract, even if the defendant is not a signer of a particular contract.*

*AMAC Two, LLC*, supra at 129 (2) (citations and punctuation omitted; emphasis supplied). Here, the trial court correctly ruled that although the individual defendants were not signers to the retainer agreement, as church officers and leadership team members they had legitimate interests in the church and thus are not considered to be strangers to the agreement. See *Healthy-IT, LLC v. Agrawal*, 343 Ga. App. 660, 670-671 (6) (808 SE2d 876) (2017) (defendant in a tortious interference action with a legitimate interest in a party to the contract cannot be considered a stranger to that contract).

Nevertheless, West cites case law concerning tortious interference with employment contracts to argue that there are genuine issues of material fact as to whether the individual defendants were strangers to the retainer agreement because they did not have the authority to terminate it or veto payments under it. It is true that *an employee* has a cause of action for tortious interference where a party with no

authority to discharge the employee maliciously and unlawfully persuades the employer to breach the contract with the employee. *Howerton v. Harbin Clinic*, 333 Ga. App. 191, 200 (1) (a) (776 SE2d 288) (2015).

> Accordingly, with respect to *employment contracts*, the category of "non-strangers" who are privileged and therefore immune from a tortious interference claim is quite limited. It includes only corporate principals or officers or co-employees who have the authority to terminate or recommend the termination of the employment of the person asserting the tortious interference claim.

Id. at 200 (1) (a) (emphasis supplied).

But West's reliance on cases involving interference with employment contracts is misplaced because West was not a church employee. The instant case involves a retainer agreement for general legal counsel, not an employment contract. So the limited category of non-strangers who are immune from a claim for tortious interference with an employment contract does not apply here. Rather, the broader category of non-strangers who have a legitimate interest in the contract or a party to the contract applies. See *AMAC Two, LLC*, supra at 129 (2) ("where a defendant has a legitimate interest in either the contract or a party to the contract, the defendant is not a stranger to the contract"). Given the relationship of the individual defendants to the church as its officers and leaders, they had a legitimate interest in the church

and are "not considered . . . stranger[s], interloper[s], or meddler[s]." *Disaster Svcs., v. ERC Partnership*, 228 Ga. App. 739, 741 (492 SE2d 526) (1997). The trial court therefore did not err in granting summary judgment on the tortious interference claim.

4. *Conspiracy to commit tortious interference*

"Georgia law does not recognize an independent tort of conspiracy. Rather, a conspiracy is a combination between two or more persons to do some act which is a tort. . . . Therefore, the gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage." *McManus v. Taylor*, 326 Ga. App. 477, 484 (3) (756 SE2d 709) (2014) (citation and punctuation omitted). Given our holding above that the trial court correctly granted summary judgment on the tortious interference claim, it follows that the court also correctly granted summary judgment on the conspiracy claim.

*Judgment affirmed in part and reversed in part. Mercier, C. J., and Rickman, J., concur.*